NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRADEMARK PLASTICS CORP., <br><br> Plaintiff, <br><br> v. <br><br> HARTFORD FIRE INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 13-5039 (SDW)(SCM) <br><br> **OPINION** <br><br> March 31, 2015 |

**WIGENTON,** District Judge

Before the Court is Defendant Hartford Fire Insurance Company's ("Hartford" or "Defendant") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). This Court has jurisdiction pursuant to 28 U.S.C. § 1333(a). Venue is proper pursuant to 28 U.S.C. § 1391(b). This motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** Defendant's Motion.

### I. FACTUAL AND PROCEDURAL HISTORY

In this diversity action, Hartford seeks summary judgment that Plaintiff Trademark Plastics Corporation ("Trademark" or "Plaintiff") is not entitled to recovery for a mysterious loss of inventory—approximately 260,000 pounds of plastic resin—under a property insurance policy (the "Policy") issued to Trademark by Hartford. Trademark is a wholesaler of plastic resins—small pellets of plastic that are used as raw material by plastic manufacturers. (Defendants' Statement

of Undisputed Facts "Defs' SOF" ¶1). Trademark organizes the bulk shipment of plastic resins from producers to third party warehouses, where the plastic resin is packaged into bags or corrugated boxes known as "Gaylords", stored, and ultimately shipped to Trademark's customers upon request. (Defs' SOF ¶¶2, 4).

KMS Packaging is one of the third party warehouses used by Trademark. (See Certification of Scott Sheldon ("Sheldon Cert."), Ex. A, Deposition of Todd Raynor ("Raynor Dep.") 27:6-27:25). KMS provided warehousing and shipping services to other plastics wholesalers as well. Id. at 23:10-24:17). At all times relevant to this matter, KMS was operated by Kevin Shivo. (Id. at 27:6-27:25). In the spring of 2011, several of Trademark's consumers complained that they were receiving wrong shipments from KMS. (Id. at 70:15-71:15). Apparently, the Gaylord boxes of plastic resin shipped from KMS bore Trademark's correct product number on its label, but the product inside the boxes did not correspond with the product number and were not the type that the customers ordered. (Id. at 72:2-79:9).

In response to these complaints, in May 2011, Trademark asked KMS for samples of the product that it had shipped to customers and discovered that a majority of the samples were incorrectly labeled. (Raynor Dep. 90:22-92:14). On June 13, 2011, Trademark sent a truck to KMS to retrieve the remainder of its inventory and was informed by Shivo that its inventory was "lost". (Id. at 103:1-103:16). Prior to receiving complaints about shipments from KMS, Trademark never performed an audit of its products stored at KMS. (Raynor Dep. 47:25-48:10). However, Trademark kept records that establish the specific quantities/weight of all goods shipped and delivered to KMS. (Raynor Aff. ¶ 30). According to Plaintiff's records, at the time of the loss, Plaintiff had 318,491 pounds of resin valued at $249,153.39 at KMS, most of which was delivered to KMS within 10 months of the loss. (Raynor Dep. 36:17-38:22; Pl. SOF ¶ 16).

Trademark reported the loss to local authorities who, upon investigation, were unable to conclude that a theft had occurred. (Raynor Dep. 104:18-106:28). Thereafter, Trademark submitted a claim under its property insurance policy with Hartford. (Compl. ¶¶ 4-7). Hartford's Special Investigations Unit investigated the loss and learned that KMS relocated from Ayers, Massachusetts to Leominster, Massachusetts sometime between March and May 2011 without advance notice to Trademark or its other customers. (See Sheldon Cert., Ex. A, Deposition of Kevin Shivo ("Shivo Dep.") 11:15-12:2, 71:7-71:16).

In a signed statement to Hartford's investigators, Shivo disclosed that KMS utilized an inefficient and often incomplete manual inventory control system. (Sheldon Cert. Ex. C ("Shivo Statement") p. 1). According to Shivo, shortly before the inventory shortfalls were discovered, KMS was overwhelmed by its growing business such that "[m]aterials were placed in any area possible just to keep up and tracking relied on the memory of the forklift driver." (Id.) Shivo further indicated that KMS did not maintain a record of its inventory before and after the move to the new warehouse, therefore, it was unclear whether Trademark's products were lost or were mistakenly comingled with those of KMS's other customers during the move. (Id.) Shivo admitted that he became aware after the move that a considerable amount of KMS's inventory was missing, but neglected to inform his customers for fear of losing their business. (Sheldon Cert. Ex. F). Before this litigation commenced and later during discovery, when asked about the whereabouts of the missing goods, Shivo speculated that it was possible that incoming shipments were only partially emptied, or that outgoing trucks "contained more materials than orders and were thus over-shipped." (Shivo Dep. 69:9-71:10; Shivo Statement, p. 2).

Based on the foregoing, Trademark theorized that the inventory had been stolen and that KMS was complicit in the illegal transfer of Trademark's merchandise. Although Trademark could

not "prove to whom KMS transferred [the] goods," in a July 31, 2012 letter to Hartford, Trademark opined that "[t]he evidence of theft is that everything is gone when there should have been more than 300,000 pounds of resin on hand. Everything was gone and the only explanation is that someone had stolen it." (Sheldon Cert. Ex. E). Under the Policy, Trademark is insured against "direct physical loss or direct physical damage to" covered property.[1] (Sheldon Cert. Ex. D, "Property Choice Coverage Form," par. A(1)(b), p. 1). However, based on the following exclusionary clause, Hartford declined to cover Trademark's inventory loss:

> We will not pay for loss caused by, resulting from, or arising out of the disappearance of property *when there is no clear evidence to show what happened* to it. This would include a shortage disclosed on taking inventory or accounting records.

(Id., "Property Choice – Covered Causes of Loss and Exclusions Form," par. B(12), p. 3)(emphasis added). Specifically, Hartford concluded that Trademark's loss is not compensable under the Policy because Trademark has presented no clear evidence to support any of its theories regarding the cause of the inventory loss.

On August 5, 2013, Trademark filed a complaint in the Superior Court of New Jersey alleging that Hartford improperly declined to honor Trademark's valid claim under the subject policy. (ECF No. 1, "Notice of Removal"). The complaint was removed to the United States District Court on August 22, 2013 pursuant to 28 U.S.C. §§ 1441 and 1446. (Id.) On August 8, 2014, Hartford filed the instant motion for summary judgment. (ECF No. 21).

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] There is no dispute that the inventory housed at KMS's warehouse constitute "covered property".

56(a).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings.  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325).  Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of

its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23.

Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 Fed. Appx. 548, 554 (3d Cir. 2002).

### B. Hartford's Summary Judgment Motion

"The burden of proving that a claim is covered under an insurance policy falls on the insured, while the burden of proving that an otherwise covered claim is excluded is on the insurer." *Bashir v. Am. Economy Ins. Co.*, 98 Fed. Appx. 928, 928 (3d Cir. 2004). Under the Policy, Trademark was insured "for direct physical loss of or direct physical damage to . . . Covered Property caused by or resulting from a covered Cause of Loss." *Property Choice Coverage Form*, p. 1. As earlier discussed, pursuant to paragraph 12 of the exclusions form, coverage is unavailable under the policy where "there is no clear evidence to show what happened" to the covered property. *Property Choice – Covered Causes of Loss and Exclusions Form*, p. 3.

Hartford asserts that Trademark's claim for recovery is explicitly precluded under the insurance policy and was appropriately denied because Trademark has failed to provide evidence, much less "clear evidence", of what became of its missing inventory. By contrast, Trademark claims entitlement to coverage for its inventory loss under the policy because "there is sufficient evidence for a valid inference of theft." This Court is therefore tasked at this juncture to determine

whether in light of the evidence garnered in discovery, Trademark has proffered clear evidence that its inventory loss resulted from a theft. Drawing all reasonable inferences in Plaintiff's favor, this Court is constrained to answer that question in the negative.

Trademark believes that the following facts strongly support an inference that theft was the cause of its inventory loss: (1) nine other resin wholesalers who also stored their products at KMS suffered significant loss of inventory at the same time as Trademark; (2) contrary to Shivo's suggestion that the products were likely overshipped, none of Trademark's customers reported that they received more products than they ordered; (3) Trademark's goods were intentionally adulterated after they were delivered to KMS; (4) the large quantity of goods missing within a short timeframe; (5) Shivo's admission that he concealed the inventory loss and lied to his customers about the status of their merchandise after KMS's unannounced relocation; and (6) the fact that there had been no prior incidences of product shortages at KMS. However, these facts do not, to the exclusion of other plausible causes of loss, establish "clear evidence" that the missing inventory was stolen. Actually, these facts can also strongly support an inference that the merchandise was lost due to KMS's woeful mismanagement of the inventory in its care.

Moreover, Plaintiff's argument signals a misapprehension of the applicable standard. In New Jersey, "[t]he terms of insurance contracts are given their plain and ordinary meaning, with ambiguities resolved in favor of the insured." *Flomerfelt v. Cardiello*, 202 N.J. 432, 441, 997 A.2d 991 (2010)(internal quotations omitted). Because Plaintiff concedes that the exclusion is unambiguous (Pl. Br. 22), this Court need only determine whether a plain construction of the exclusionary clause bars Plaintiff's entitlement to coverage. While there are no New Jersey cases interpreting "clear evidence" as it relates to insurance policies, Black's Law Dictionary defines "clear evidence" as:

> Evidence which is positive, precise and explicit, which tends directly to establish the point to which it is adduced and is sufficient to make out a prima facie case. It necessarily means a clear preponderance. It may mean no more than a fair preponderance of proof but may also be construed as requiring a higher degree of proof.

Black's Law Dictionary 251 (6th ed. 1990). This unambiguous and stringent standard undercuts Trademark's argument that facts demonstrating a "valid inference of theft" should suffice as clear evidence of same.

Also, the "inference of theft" language derives from inapplicable New York case law upon which Plaintiff relies heavily. In that jurisdiction, when an insurer claims an exclusion based upon "mysterious disappearance", the insured can defeat a summary judgment motion if it presents evidence of "'a series of circumstances concerning the [loss] which if accepted by [the] triers of . . . fact, might lead to the inference' that a theft had occurred." Pl. Br. 17-18, citing *Van Dutch Products v. Zurich Ins. Co.*, 67 A.D.2d 844, 845, 413 N.Y.S.2d 8 (1979), *Callahan's Shursave v. Traveler's Companies*, 159 A.D.2d 936, 552 N.Y.C.2d 801 (1990). New Jersey does not subscribe to this standard.

In *Sylvan Paper Corp v. Verlan Fire Ins. Co.*, 2005 U.S. Dist. LEXIS 29325, *13-14 (D.N.J. Nov. 22, 2005) (Pisano, J.), a factually analogous "mysterious disappearance" case from this District where the insured presented a variety of circumstantial facts to suggest that theft was the most plausible explanation for its missing property, the Court found Plaintiff's assertions of theft unpersuasive in the absence of proof regarding who stole the merchandise and when. *Sylvan* involved the loss of 300,000 pounds of paperstock while the merchandise was being removed from a storage facility that was shutting down. As in this case, the parties in *Sylvan* could only speculate about how the paperstock went missing, and the insured put forth several plausible theories to

explain the loss, including: (1) a clerical error; (2) theft by employees of the storage facility; (3) theft by an employee of the insured; (4) theft by an unrelated third party; (5) the merchandise was mistakenly taken by another customer of the storage facility during the chaotic aftermath of the warehouse closing. The Court observed that "mysterious disappearance" clauses are precisely designed to exclude coverage in situations where no single theory can sufficiently explain the claimed loss, and further noted that finding otherwise would undermine the insurer's right to bar "claims based on speculation and conjecture." *Id. at* \*10. Trademark's allegation of theft is largely speculative. It is undisputed that investigators could not conclude that Trademark's inventory had been stolen as there was no physical evidence of a theft, no eyewitness account that a theft occurred, nor was there evidence that the missing merchandise—about 130 tons of plastic resin—was sold on the black market.

Other courts have found the "mysterious disappearance" exclusion applicable even in circumstances where theft "appeared to be the only reasonable" inference from the facts. In *C.T.S.C. Boston, Inc. v. Continental Ins. Co.,* 25 Fed. Appx. 320, 325 (6th Cir. 2001), the Court held that the provision barred coverage for the loss of 57 laptop computers that went missing from the Plaintiff's computer training facility because Plaintiff failed to produce "physical evidence to show what happened to the missing laptops . . . although their inference that the laptops were stolen appears to be the only reasonable one." *See also*, *e.g., Southern Ins. Co. v. Domino of Cal. Inc.*, 173 Cal. App. 3d 619, 219 Cal. Rptr. 112 (2d Dist. 1985)(coverage precluded where claimant discovered a four-ton shipment of women's sweaters was missing without evidence of break-in or explanation of how merchandise of that size could have been removed from the warehouse undetected).

9

Nonetheless, the operative standard in this case—clear evidence—plainly defeats Trademark's claim. The facts adduced by Plaintiff are susceptible to inferences other than theft, and worse still, they do not provide "clear evidence of what happened" to the missing inventory. Therefore, Defendant is entitled to summary judgment.

### III. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is **GRANTED.** A corresponding order follows.

s/ *Susan D. Wigenton*  
**SUSAN D. WIGENTON**  
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk  
cc: Magistrate Judge Steven C. Mannion